**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------

NUTRAQUEST, INC.                          :

           Plaintiff,              :        Civ. No. 06-186 (DRD)

                                :

        v.                            :

                                :

ALL AMERICAN PHARMACEUTICAL  :       **O P I N I O N**
& NATURAL FOODS CORPORATION  :
et al.                                         :

           Defendants.         :

                                :

------------------------------------------------------

CATALINA & ASSOCIATES, PC
Richard A. Catalina, Jr., Esq.
167 Avenue at the Common
Suite 9- Second Floor
Shrewsbury, NJ 07702

*Attorneys for Plaintiff*


LOWENSTEIN SANDLER, PC
Paul Salvatoriello, Esq.
65 Livingston Avenue
Roseland, NJ 07068

*Attorneys for Defendant*


**DEBEVOISE, Senior District Judge**

## I.  BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff Nutraquest, Inc., a New Jersey corporation, formerly known as Cytodyne

Technologies, Inc., ("Nutraquest" or "Plaintiff") filed a complaint against defendants All

American Pharmaceutical and Natural Foods Corporation, a Montana corporation, and All American EFX, an unincorporated entity in California ("All American" or "Defendant") alleging the following: (1) trademark infringement under Section 43(a) of the Lanham Trademark Act (the "Lanham Act"), 15 U.S.C. § 1125(a); (2) trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (3) cybersquatting under the Anti-Cybersquatting Consumer Protection Act, Sections 43(c) and (d) of the Lanham Act, 15 U.S.C. § 1125(c) and (d); (4) trademark infringement under the New Jersey Trademark statute, N.J.S.A. 56:3-13.16; (5) unprivileged imitation under the New Jersey Unfair Competition statute, N.J.S.A. 56:4-1; and (6) common law trademark infringement and unfair competition (the "Complaint").  Both parties are in the business of marketing dietary supplements.

Plaintiff alleges, *inter alia*, that Defendant's use of the names and marks "NYTRIC EFX," "KRE-ALKALYN EFX," and "ALL AMERICAN EFX" infringe on Plaintiff's use of the name and mark "XENADRINE EFX."  Specifically, Plaintiff claims that the mark "EFX" has been infringed upon.  Plaintiff seeks, among other relief, a preliminary and permanent injunction as well as damages for the alleged infringement.

Currently before the court is Defendant's motion to stay the proceedings in this matter pending the resolution of an opposition proceeding before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("PTO") (the "Opposition Proceeding").  The Opposition Proceeding was initiated by Plaintiff in opposition to Defendant's application to register its mark "NYTRIC EFX" with the PTO.

### III.  DISCUSSION

A.  **The Court's Power to Grant a Stay**

      The district court's power to stay a proceeding "is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication."  U.S. v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994) (citing Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1077 (3d Cir. 1983)); Hertz Corp. v. The Gator Corp., 250 F. Supp. 2d 421, 424 (D.N.J. 2003).  "This power to stay proceedings 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"  Hertz, 250 F. Supp. at 424 (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).  "The party seeking the stay must demonstrate 'a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party.'"  Id. (quoting Gold, 723 F.2d at 1075-76).

B.  **The Doctrine of Primary Jurisdiction**

      The doctrine of primary jurisdiction "has developed to guide courts in determining how to proceed when some or all of the issues in the litigation are concurrently cognizable before an administrative agency."  Driving Force, Inc. v. Manpower, Inc., 498 F. Supp. 21, 24 (E.D. Pa. 1980), abrogated on other grounds by A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198 (3d Cir. 2000).  The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  U.S. v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956).  Primary jurisdiction:

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.  No fixed formula exists for applying the doctrine of primary jurisdiction.  In every case

> the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

Id. at 63-64 (citations omitted).

In Driving Force, the plaintiff filed an action under the Lanham Act seeking damages and injunctive relief which would grant plaintiff the exclusive use of the name "The Driving Force, Inc." The defendant filed a counterclaim seeking similar relief and thereafter both parties filed motions for a preliminary injunction. Defendant then filed a post preliminary injunction hearing brief which argued that both motions should be denied, and that the court should stay the proceedings based on the doctrine of primary jurisdiction pending a final decision of the TTAB in the concurrent opposition proceeding.

Invoking the doctrine of primary jurisdiction, the court granted the stay of the district court proceedings. The court found that the question in that case was "one of the right to trademark registration and use, and thus is precisely the sort of issue with which the Trademark Trial and Appeal Board, unlike the district court, deals on a regular basis." 498 F. Supp. at 25. The court added that although the decision by the TTAB may serve as a final disposition of the matter, if one of the parties were dissatisfied, it had the option of taking an appeal to the Court of Customs and Patent Appeals or pursuing a civil action in district court. Id. The court stated that, "[e]ven though decisions of the Trademark Office are not binding in regard to litigation in the courts on the same or related issues, . . . a decision of the Patent Office as to the confusing similarity of the marks must be accepted as controlling unless the contrary is established by evidence which in character and amount carries thorough conviction." Id. (citations omitted).

Finally, the court noted that the plaintiff "advanced no reasons to support its contention of prejudice resulting from any delay pending a decision by the Patent and Trademark Office. Rather, plaintiff has merely asserted that that office has stayed its proceedings, and that it has a tremendous backlog and no procedure for expediting cases." Id. at 26. The court found that such a backlog cannot prevent application of the doctrine of primary jurisdiction.

All American argues that the court should follow the court's decision in Driving Force and stay the current proceedings pending a decision of the TTAB. It contends that the Complaint and the Opposition Proceeding share identical legal and factual issues and that Nutraquest's claims flow directly from All American's use of the term "EFX." (Def.'s Br. 6). All American argues that because the TTAB "is the best-equipped tribunal to deal with the alleged likelihood of confusion between Nutraquest's and All American's marks," the stay should be granted. (Def.'s Br. 6-7).

Nutraquest argues that the doctrine of primary jurisdiction is inapplicable and relies primarily on Goya Foods, Inc., v. Tropicana Products, Inc., 846 F.2d 848 (2d Cir. 1988). In Goya, plaintiff, Goya, appealed the dismissal of its action which sought a declaratory judgment of non-infringement with respect to two of its trademarks and cancellation of one of the trademark registrations of the defendant, Tropicana. The dismissal was based on: the court's finding that the pending opposition proceeding before the TTAB did not give rise to a justiciable controversy; and the court's reluctance to intercede in that proceeding.

Goya also appealed a subsequent order denying its motion for leave to file an amended complaint alleging the basis for apprehending a claim of infringement by Tropicana. The district court denied the motion on the ground that even if the pleading was sufficient, he would have

stayed the action pending the TTAB proceeding.  The district court relied on the doctrine of primary jurisdiction in reaching its decision.

The issue presented was "whether a district court may stay trademark infringement litigation pending the outcome of registration proceedings before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office."  Id. at 849.

In evaluating the district court's invocation of the doctrine of primary jurisdiction, the Court found that the doctrine has a narrow scope and that "[t]he doctrine has been applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, 'particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency.'" Id. at 851 (quoting Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 304 (1976)).  After considering the nature of registration proceedings and infringement actions, including that fact that an applicant for registration may bring a civil action in district court pursuant to 15 U.S.C. § 1071(b) if it is disappointed with the decision of the TTAB, the Court found that "[i]n significant respects this basic framework of federal trademark registration differs from those in which the doctrine of primary jurisdiction applies."  Id. at 852.  The court added that "[t]his scheme of 'review' is thus some distance from the traditional arena of primary jurisdiction, 'a doctrine *allocating the law-making power* over certain aspects of commercial relations.'" Id. at 853 (quoting W. Pac. R.R. Co., 352 U.S. at 65).

Finding that the registration determination by the TTAB does not raise the technical questions within the expertise of an agency, the Court stated that:

> [l]ikelihood of consumer confusion, which is relevant to the

6

registration determination under 15 U.S.C. § 1052(d), is a legal standard with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition. Like the standard of "fraudulent misrepresentation" at issue in *Nader v. Allegheny Airlines, supra,* the legal question in trademark registration proceedings-particularly those involving opposition on grounds of consumer confusion-is "within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of th[e particular] case," 426 U.S. at 305-06, 96 S.Ct. at 1987-88 (footnote omitted).

If a district court action involves only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available, *see Continental Connector Corp. v. Continental Specialties Corp., supra,* 413 F.Supp. at 1348-49, the doctrine of primary jurisdiction might well be applicable, despite the differences between the trademark registration scheme and other regulatory patterns. In such a case, the benefits of awaiting the decision of the PTO would rarely, if ever, be outweighed by the litigants' need for a prompt adjudication. But where, as in the pending case, a district court suit concerns infringement, the interest in prompt adjudication far outweighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights.

Id. at 853-54 (most citations omitted).  Additionally, the Court added:

[p]resumably, awaiting the PTO's registration decision would allow the District Court to enlist the PTO's reasoning and even its results in support of its own conclusions, assuming the registration decision rested on grounds relevant to the infringement claim. But the outcome of the PTO registration proceeding would not affect the legal standard applied in the infringement claim or the scope of the required fact-finding. The District Court would still independently have to determine the validity and priority of the marks and the likelihood of consumer confusion as to the source of the goods, *see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir.1986); *Mushroom Makers, Inc. v. R.G. Barry Corp., supra,* 580

7

> F.2d at 47-48, with this latter issue to be resolved not by reference to a registration determination by the PTO but by application of the multi-factor balancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

Id. at 854.

Although the Goya court did not foreclose on the possibility of invoking primary jurisdiction in all cases, its reasoning behind not invoking the doctrine in the context of an infringement claim is sound.  Furthermore, though the Court of Appeals in this circuit has yet to decide the issue of whether primary jurisdiction applies in the context of an opposition proceeding before the TTAB, it would likely follow the lead of the Second Circuit's decision in Goya.  Because it is clear that this court is vested with original and exclusive jurisdiction to hear matters involving trademark disputes,  See 15 U.S.C. § 1121(a)[1], and is capable of doing so, and for the reasons stated in Goya, the court will not invoke the doctrine of primary jurisdiction to stay the proceedings pending the decision of the TTAB.

Thus, under the district court's power to stay a proceeding, the court must weigh the competing interests of the parties and see whether the party seeking the stay has demonstrated "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party."  Gold, 723 F.2d at 1075-76).

Plaintiff argues that if it had to wait for a decision from the TTAB, it would continue to

---

[1]15 U.S.C. § 1121(a) states, "The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

8

suffer damages because All American is currently and actively using the infringing marks, and Plaintiff believes this use will continue the "likelihood of confusion" and cause further dilution to the "EFX" marks. (Pl.'s Br. 19). Additionally, Plaintiff claims argues that granting a stay would not prevent further proceedings in this court and would create piece-meal litigation. (Id.).

Defendant, on the other hand, does not argue that it will suffer any significant hardship or inequity. Instead, Defendant claims that the stay should be granted because the "the TTAB Opposition proceeding would be more cost-effective for the parties, and would result in a more streamlined, rapid and efficient resolution of the issue of likelihood of confusion that is central to all of Plaintiff's claims in this action."[2] (Def.'s Reply 2). In addition, Defendant argues that Plaintiff's claims of potential harm are unfounded because since filing its action, Plaintiff has done nothing to move the litigation forward. (Id.).

In weighing the competing interests of the parties, the court finds that while there is a fair possibility that Plaintiff may suffer damages if this action is stayed, Defendant will not likely suffer any significant hardship or inequity if the matter proceeds in this court. In light of the foregoing, the court finds that the most fair and efficient way to continue in this matter is to deny the motion for a stay and proceed with discovery. At the hearing on the motion for a stay, the court suggested that if the motion were denied, final disposition of the case might be accelerated if discovery were in the first instance limited to liability, i.e., infringement and dilution and likelihood of confusion. If that course were followed, dispositive summary judgment motions might be appropriate.

---

[2]At oral argument, counsel for Defendant, Stephen R. Buckingham, Esq., noted that the TTAB proceeding would likely last one and one half to two years.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion for a stay will be denied.  Discovery in the action will be bifurcated and will proceed initially on the issues of: (1) trademark infringement and dilution; and (2) likelihood of confusion.  The court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.



Dated:         January 9, 2007


10